Thank you, Your Honors. May it please the Court. There are three main issues in this case. The first issue is the stop-time rule in regards to eligibility for cancellation of removal. The second issue is equitable tolling of the statutory 90-day deadline for this court's precedent in Ortiz-Santiago v. Barr and Chen v. Barr. In regards to the first issue, the Board in its decision actually never addressed Mr. Mejia's claim for eligibility for cancellation of removal. That was raised in the context of a motion to reopen, and the Board's decision only considered his motion to reconsider. However, the Board in another case in matter of Mendoza-Hernandez has ruled that the two-step approach applies. This decision is actually pending before the Supreme Court in Ms. Chavez v. Barr. That was argued earlier in November, and the same issue has been decided by the Third and the Tenth Circuits, and so we would request that regarding this issue, it may be wise to wait for the Supreme Court's decision. However, in reference to equitable tolling, Mr. Mejia has argued that his, the 90-day deadline should be equitably tolled, particularly because he applied for relief that he was eligible for after the deportation order, the removal order in his case, and how to determine the equities in that case was addressed by the Board in matter of Pena-Diaz. The Board in Mr. Mejia's case did not consider and did not analyze his claims under that precedent. Ms. Chun, let me ask you a case about Ms. Chavez. My understanding is that the claim in that case arose in the direct removal proceeding. That is, that the contention that two documents can't add up to one notice to appear was raised as soon as the alien was sought to be removed. Is that correct? My understanding, Your Honor, is that it was not raised before the immigration judge, but it was raised during the pendency of his appeal. So it was not raised before the immigration judge and then he appealed his case while his case was pending. It was raised in the initial removal proceeding rather than as a request to reopen or reconsider. That is correct, Your Honor. All right. And so for our case, we think that Mr. Mejia argues that the Board's decision in matter of Pena-Diaz where a noncitizen files a motion to reopen for relief he was not otherwise eligible for before the IJ, that whether the motion to reopen should be decided, the factors that should be considered involve the actions of DHS. So if DHS knows that the noncitizen remains in the U.S., knows that the noncitizen has a deportation order, and allows a noncitizen to stay, that that sort of reliance interest should be considered in the equities of whether to reopen, whether to grant a motion to reopen. And that is also what is different in Mr. Mejia's case than in Chen V. Barr and also in Ortiz-Santiago V. Barr. Chen had accrued the 10 years during the original proceedings. So her not challenging the notice to appear and arguing that she was eligible for cancellation and removal would be considered a forfeiture, whereas Mr. Mejia was not eligible for original proceedings. And then he did become eligible after the deportation order, and then he also did not file a motion to reopen right away because he was reporting regularly to DHS under an order of supervision. DHS, again, did know that he had deportation order, but permitted him to remain as long as he reported regularly. And so that is a factor that the board stated should be considered. And that's also a factor that this court in Gabbara V. Mukasey stated should be considered when deciding equitable tolling of the motion to reopen deadline. In Gabbara V. Mukasey, the court noted that the noncitizen was granted a removal by DHS, that DHS approved the immigrant visa petition filed on his behalf and did not execute the order. And so this court held that the board erred in not considering those factors in whether the deadline should be equitably tolled. And again, that is also how Mr. Mejia's is distinguishable from Chen V. Barr in that there's nothing in Chen V. Barr that suggested that she was regularly reporting to DHS and that DHS was openly permitting her to remain and not executing her order during the time before she had filed her motion to reopen. In addition, in Ortiz-Santiago, the stop time rule was never an issue because Ortiz-Santiago had already applied for cancellation of removal before the IJ because again, he also had the 10 years of physical presence during the original proceedings. And this court held that the notice requirement and the notice to appear was a claim processing rule, not a jurisdictional rule. Whereas Mr. Mejia is not challenging the notice in the notice to appear by itself, but the interaction and the play between the notice to appear and the stop time rule. And again, that how to interpret the stop time rule with the definition of the notice to appear has already been interpreted by the Supreme Court in Pereira, will also be taken up by them again in Ms. Chavez. And so for those reasons, the forfeiture analysis in Ortiz-Santiago, and also Chen Bibar don't apply readily to Mr. Mejia's case because again, he was eligible for relief after the removal order. And that also goes to how the prejudice should be, the prejudice analysis should also be different. And I'm going to reserve my two minutes for certainly counsel. Mr. Mourner, Ms. Mourner, sorry. That's fine, thank you. May it please the court, Brooke Maurer for the respondent, the Attorney General. The government asserts that the facts in this case are not substantially different from those decided by this court in both Chen and Ortiz-Santiago. Here, just as in Chen, the petitioner failed to timely object as to the contents of the NTA and has failed to show excusable delay or prejudice. The petitioner arrived in 2005 and was filed and had an NTA filed in 2011. He was already removed in 2012, but did not file a motion to reconsider until July of 2018 after Pereira was decided. Forgive me, but in terms of the government's decision to permit Mr. Mejia to remain in the NTA, is it likely to change? I found it quite unusual. As far as the supervision order? You know, the length of time that he's been allowed to remain. I mean... I mean, I'm not going to be speaking for the record, but I can speak from experience if you would like an explanation. But I would be going outside of my... I'd be grateful for an explanation. Okay. In orders of supervision, in cases like that, we're looking at people with unexecuted removal orders closing in on the million mark, and they often prioritize these. In 2019 alone, they only removed 265,000 people that had an outstanding removal order. It just comes to an issue of prioritizing. And while the government does expect removal as often as possible, they also try to keep things moving as fastly as possible as financial concerns allow. I also want to point out a very big difference between deferred action and a supervised order of release. Deferred action is what a lot of the people, including Diaz-Pena and some of the other cases that Petitioner Cites II had, deferred action is a completely discretionary form of relief that is granted by DHS. And when somebody has that status, they are not viewed as being unlawfully here in the United States. They're not going to be removed until the end of that granted status. Now, when it comes to an order of supervision, as the regulation clearly indicates, that they will be removed as soon as it is practicable by the government to get there. Yes, they are required to report that they are not viewed in any sort of form of any type of lawful status. Now, I also note, unfortunately, that the government has also proposed just recently, as of November 17th, I do believe, DHS has proposed to start limiting the ability of people with orders of supervision to obtain employment authorizations because they've had an issue where they've had difficulties removing people with orders of supervision because it made it difficult for them to comply with a lawful status. And so, I think that that helps explain a little bit. And if you would like me to provide additional information, I could always provide 28J with some of the sites for that information as well. Never apologize for something that you were asked to do. I'm so confined by the record. But going back to the petitioner's concerns, they failed to address the board's holding and this court's holding wholly as how it applies to his case as just as in Chen and how this case actually differs. I mean, the fact that he came into eligibility after his initial removal order is exactly just that as in Chen. And not only that, he was not even in proceedings. He could have pursued this relief back in 2015 when the 10-year anniversary of his entry came in there. The government would like to point the court to the holding in Manriquez, Alvarado. They basically had a futile for him to pursue the relief because Pereira had not yet been decided. Yet the court held that Pereira merely interpreted a statute that had been available since long before the petitioner became eligible for relief. And just because that it was futile, it doesn't mean that that remedy was not available to them. That remedy was always available to seek the cure on the NTA and yet Mejia Padilla did not pursue it. So, the government holds that because of these determinations in both Chen and Ortiz-Santiago that this court has foreclosed from granting the petition and they should have pulled the determination of the board. If there's no further questions? Ms. Morrow, I may have missed this. There was a hiccup in the electronic connection for a minute. But I wondered what the government's position was with respect to the Nij-Shavaz case at the Supreme Court. Could that case in any way affect this case? Should we hold this case? Well, we're talking about the pending about the curing of the notice of hearing, is that reference? I think in this case, I mean, the stop time, I mean, it would obviously have an impact on eligibility, but I don't think that it would change the fact that the petitioner sat on his rights far too long and didn't go after the NTA for its failure to have the time and the date. So, I don't believe that holding would be necessary in this matter. If there are no further questions, the government would rest on the brief. Thank you, Ms. Morrow. Anything further, Ms. Chun? Yes, Your Honor. Thank you. Just in terms of the timing, so 2015 was when Mr. Mejia did accrue the 10 years of physical presence. And so, at that point in time, he was reporting to ICE under an order of supervision. So, DHS, ICE knew he was here. He was reporting to them physically, regularly. And again, in Bhabaravi Mukherjee, this court stated that those sorts of actions by DHS are relevant to consider whether equitable tolling should apply because of that reliance interest and why someone would wait to file a motion to reopen later. And in terms of Ortiz Santiago Ibar, again, that was a notice issue in just the notice to appear. The stop time rule was not at issue at all because he had already applied for cancellation of in our case. And also, the prejudice and forfeiture analysis is different in our case because Mr. Mejia could not have raised that before the immigration judge. He had not yet accrued that 10 years. And so, the board did say, normally, we don't want to reward people and let them file motions to reopen when they later become eligible for relief they were not for. However, if there are certain actions taken by DHS that would, in terms of allowing the noncitizen to remain in the U.S. notwithstanding the removal order, that is relevant to whether or not the motion to reopen should be granted. And so, again, this case is different in the sense that he couldn't have raised his or he couldn't have raised cancellation removal before the IJ. He was eligible for relief afterwards. And although the board does not want to. Ms. Chun, I'm not sure in what sense he could not have raised the contention that the notice to appear was not valid. Certainly, Pereira raised the contention that the notice to appear was not valid. That argument was apparent, right? The argument that two documents can't add up to one notice to appear was apparent as soon as this case, as soon as this removal proceeding began. He couldn't file a request for cancellation of removal until being here for 10 years. But you were asserting that he could not have contested the validity of the notice to appear. And I'm just not sure how that can be right. I'm sorry, Your Honor, if that's what that is not what we're saying. We're saying he could not have raised his eligibility for cancellation of removal under the stop time. But he could have contended that the notice to appear was not valid. Yes. Yes, Your Honor. He could have. Yes. Okay. Thank you very much. The case has taken under advisement and the court will be in recess. Thank you.